FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 28 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARC TUCKER,

                          Petitioner,

- against -

P. HEATH, Superintendent,

                          Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORDANDUM & ORDER**
10-CV-2126 (CBA) (RLM)

**AMON, Chief United States District Judge:**

Marc Tucker, proceeding pro se, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to vacate his New York state conviction, following a jury trial, for first-degree assault and second-degree criminal possession of a weapon. For the reasons set forth below, Tucker's petition is denied.

## BACKGROUND

The Court briefly recites the background of Tucker's state court conviction.

### A. Factual History

In 2003, Tucker was employed as a full-time custodian at the Rockaway Boulevard Senior Center operated by the Jamaica Service Program for Older Adults (the "Program"), located in Ozone Park, Queens. (See Trial Tr. at 621:2–11, 622:12–17.)

On February 21, 2003, Allan Palzer, the Director of Administrative Services, asked Tucker to meet with him at the Program's main office in Jamaica, Queens. (See id. at 621:12–24, 632:10–633:9.) Tucker arrived at the main office at around 2 p.m., carrying a bag. (Id. at 424:15–20, 427:11–17, 637:2–6.) Imogene Gittens, who was working as a receptionist, informed Palzer that Tucker had arrived and asked Tucker to wait in the reception area. (Id. at 426:10–427:10, 636:6–9.) Shortly thereafter, Palzer came to the reception area, retrieved

1

Tucker, and the two proceeded to Palzer's office. (Id. at 427:21–428:4, 636:10–25, 637:7–25.) Palzer told Tucker that the Program was terminating his employment and, after a brief discussion, gave Tucker his letter of termination and final paycheck. (Id. at 640:9–641:10.)

In response, Tucker grabbed Palzer around the neck, pulled out a handgun, and fired three times. (Id. at 641:16–642:9.)

Several other people in the office heard the shooting. Associate Director of Social Services Lucille DeMarinis—who sat in the office next to Palzer's—was the first one to Palzer's office after the shooting. (See id. at 466:23–467:1, 478:2–20; see also id. at 435:23–436:13, 461:11–22.) Upon entering the office, DeMarinis saw that Palzer had been shot once in the face and once in the left shoulder. (Id. at 478:21–479:3.) Other than DeMarinis and Palzer, no one else was present in the office. (Id. at 479:4–6.) Hearing Palzer pleading for help, DeMarinis grabbed tissues from her office and applied pressure to the wound on his face until the paramedics arrived. (See id. at 479:7–25; see also id. at 533:14–20.) By the time the paramedics arrived, Palzer was totally unresponsive; he was taken to Mary Immaculate Hospital in critical condition. (Id. at 536:24–537:1, 538:15–18, 543:19–544:2.)

The Program's Executive Director, Carol Hunt—who sat two doors down from Palzer's office—also heard the shooting and called 911. (Id. at 457:21–459:13.) NYPD Detective Christopher Bollerman responded to that call along with a number of other officers. (Id. at 728:4–24.) Upon arriving at the scene, Detective Bollerman first spoke to the patrol officer who had arrived previously and then, assisted by other detectives, interviewed the people who were present at the time of the shooting. (Id. at 730:4–22.) As a result of those interviews, and after reviewing employee and personnel information from the Program, Tucker became the top suspect in the investigation. (Id. at 731:21–732:24.)

Tucker was arrested roughly a week later, on March 2, 2003, when he turned himself in to police at a local church. (Id. at 552:12–553:3, 554:2–7, 556:4–560:17.) After receiving Miranda warnings and signing a written waiver form, Tucker confessed to shooting Palzer. (Id. at 740:5–748:7.) Tucker then wrote and signed a written confession. (Id. at 748:16–758:3.)

## B. State Conviction and Appeal

Tucker was charged with attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree. His trial commenced on January 20, 2004, before Justice Randall T. Eng. The first three witnesses called by the prosecution were Gittens, Hunt, and DeMarinis—the Program employees that were present at the time of the shooting. The prosecution then elicited testimony from the paramedic who responded to the 911 call, two police officers, Palzer himself, one of the physicians who treated Palzer, and another detective, before calling the lead detective, Detective Bollerman, to the stand.

A brief portion of Detective Bollerman's direct examination prompted vigorous objections from defense counsel. In the disputed portion of his testimony, Detective Bollerman provided a narrative of how the investigation proceeded after he arrived at the scene and how Tucker was ultimately identified as the prime suspect. The relevant portion of the transcript reads:

> [ASSISTANT DISTRICT ATTORNEY]: Going back to these
> interviews you said you and your partners conducted
> approximately ten; is that right?
> [DETECTIVE BOLLERMAN]: Yes, ma'am.
> Q: Did you interview anyone named Marc Tucker while you were
> there?
> A: No.
> Q: Now after conducting these interviews did your investigation
> continue?
> A: Yes, it did.

3

> Q: And did you obtain any additional information while you were at the Jamaica Service Program for Older Adults?
> [DEFENSE COUNSEL]: Objection called for hearsay.
> THE COURT: Overruled; you may answer yes or no.
> A: Yes, ma'am.
> Q: What, if anything, did you obtain?
> [DEFENSE COUNSEL]: Objection.
> THE COURT: Overruled, answer the question, please.
> A: We obtained names of an employee and personnel information.
> Q: Now after you obtained that information and after the interview, were you able to develop a suspect?
> A: Yes.
> [DEFENSE COUNSEL]: Objection.
> THE COURT: Overruled.
> Q: What was the name of the suspect?
> A: Marc Tucker.
> [DEFENSE COUNSEL]: Objection.
> THE COURT: Overruled.
> Q: I'm sorry, what was that?
> THE COURT: What was that answer, please?
> THE WITNESS: Marc Tucker, your Honor.
> THE COURT: Next question.

(Id. at 731:14–732:25.) Defense counsel then moved for a mistrial, arguing that Detective Bollerman effectively testified that "ten people said Marc Tucker did it, that's why we looked at Marc Tucker as a suspect." (Id. at 762:7–14.) Finding no prejudice from that line of questioning, the trial court denied counsel's motion for a mistrial. (Id. at 765:7–766:10.) Defense counsel renewed his motion for a mistrial at the conclusion of the prosecution's case, claiming that Detective Bollerman's testimony violated Tucker's constitutional right to confront adverse witnesses. (Id. at 820:18–25.) The trial court denied that motion as well. (Id. at 821:1–5.)

The next morning, Tucker waived his right to testify and the defense rested without presenting an affirmative case. (Id. at 826:4–827:4.) At that point, defense counsel again renewed his motion for a mistrial, arguing that admitting Detective Bollerman's testimony was a

4

serious evidentiary error and a violation of Tucker's constitutional right to confrontation. (Id. at 828:21–830:4.) The trial court again denied that motion. (Id. at 830:21–23.)

The jury acquitted Tucker on the top charge in the indictment, attempted murder, but found him guilty of assault and criminal possession of a weapon. (See id. at 948:19–951:16.) On April 2, 2004, the trial court sentenced Tucker to concurrent prison terms of 22 years on the assault count and 15 years for the weapon charge. (Sentencing Tr. at 31:19–32:5.)

Tucker appealed his conviction to the Appellate Division, Second Department. (See Litsky Ex. V.) In a brief filed by counsel on May 25, 2006, Tucker again argued that his constitutional right to confront adverse witnesses was violated when Detective Bollerman suggested that Tucker became a target only after numerous witnesses inculpated him.[1] (See id. at 19–27.)[2]

On September 30, 2008, the Appellate Division, like the trial court, rejected Tucker's challenge to Detective Bollerman's testimony and affirmed his conviction. See People v. Tucker, 866 N.Y.S.2d 209 (2d Dep't 2008). It reasoned that the disputed evidence was "elicited . . . to explain the sequence of events leading to the defendant's arrest," not for the truth of the matter asserted, and therefore violated neither the hearsay rule nor the Confrontation Clause. See id. The Court of Appeals denied leave to appeal on February 5, 2009. People v. Tucker, 12 N.Y.3d 763 (2009). Tucker's conviction became final on May 6, 2009, when his

---

[1] Tucker also argued that his 22-year sentence should be reduced, as it was excessively harsh for a first-time offender under the circumstances. (Litsky Ex. V at 27–29.)
[2] Tucker also sought leave to file a pro se supplemental brief, (see Litsky Ex. A), which the Appellate Division initially granted, (see Litsky Ex. D). When Tucker failed to file his supplemental brief after multiple extensions and granted requests for additional documents, however, the Appellate Division vacated its prior order and denied leave to file a supplemental brief. (Litsky Ex. U.)

5

time to seek review by the United States Supreme Court expired. See Williams v. Artuz, 237 F.3d 147, 150–51 (2d Cir. 2001).

### C. Post-Conviction State Court Proceedings

On July 14, 2006, during the pendency of his direct appeal, Tucker filed a pro se motion to vacate his conviction pursuant to N.Y. Criminal Procedure Law § 440.10.[3] (See Litsky Ex. CC.) His challenge was based on five grounds: (1) unspecified violations of his constitutional rights, (2) prejudicial prosecutorial misconduct, (3) false testimony by prosecution witnesses, (4) ineffective assistance of counsel, and (5) failure to provide Miranda warnings prior to interrogation. (See id. at 3–4.) By Order dated September 21, 2006, the trial court denied that motion, finding that Tucker failed to provide any legal or factual basis to overturn his conviction on the first four grounds and that the fifth ground was more properly considered on direct appeal. (See Litsky Ex. GG.)

### D. Federal Habeas Petition & Stay Order

Tucker timely filed the instant petition for habeas corpus on May 5, 2010. (D.E. # 1.) Initially, Tucker's petition raised two claims: (1) that the trial court violated his Sixth Amendment right to confront adverse witnesses by permitting Detective Bollerman to testify that he was able to develop a suspect after interviewing a number of witnesses ("Ground One") and (2) that Tucker's due process rights were violated when the Appellate Division denied certain requests for supplemental materials ("Ground Two"). (Id. ¶ 12.) Although Tucker admitted he had not exhausted his state court remedies with respect to Ground Two, he claimed that his failure to do so was the result of ineffective appellate counsel. (D.E. # 11 at 1–2.) He further

---

[3] Tucker also filed a pro se motion seeking to set aside his sentence pursuant to N.Y. Criminal Procedure Law § 440.20. (See Litsky Ex. DD.) As Tucker's pending petition does not contest the propriety of his sentence, the Court need not summarize that motion further.

claimed that appellate counsel was ineffective because she failed to appeal either the trial court's denial of trial counsel's repeated motions for a mistrial or the decisions made at the suppression hearing. (See id. at 6.) As Tucker had not previously presented those claims in the state courts, he requested that the Court stay his federal petition so that he could seek state post-conviction relief. (Id. at 4–8.) The Court granted the requested stay on September 19, 2011. (D.E. # 12.)

### E.  Additional State Court Post-Conviction Proceedings

On November 29, 2011, Tucker filed a writ of error coram nobis in the Appellate Division, Second Department, based on the purported ineffective assistance provided by appellate counsel. (D.E. # 15.) In that submission, he argued that his appellate counsel had failed to appeal the trial court's denial of a mistrial based on Detective Bollerman's testimony, thereby denying him an adequate defense. (See id.) He did not, however, claim that appellate counsel was ineffective due to her failure to obtain the trial records he requested or her decision not to appeal the trial court's suppression rulings. (See id.)

The Appellate Division summarily denied the writ on May 15, 2012, finding that Tucker "has failed to establish that he was denied the effective assistance of appellate counsel." People v. Tucker, 943 N.Y.S.2d 897, 898 (2d Dep't 2012). The Court of Appeals denied his application for leave to appeal on August 24, 2012. People v. Tucker, 951 N.Y.S.2d 897 (2012).

### F.  Resumption of Federal Habeas Proceedings

Tucker sought to amend his habeas petition on September 21, 2012. (D.E. # 16.) The Court granted leave to amend on November 6, 2012, but noted that because he had exhausted only the claim of ineffective assistance based on appellate counsel's failure to appeal the mistrial decision, the remaining claims of ineffective assistance remained unexhausted. (See D.E. # 17 at 3.) As Tucker could not demonstrate good cause for his failure to exhaust those remaining

7

claims, the Court found that a second stay would not be warranted. (See id. at 4.) It therefore cautioned Tucker that if his amended petition again contained unexhausted claims, he would be forced to either abandon those claims or face the dismissal of his petition. (See id. at 3.)

By letter dated December 3, 2012, Tucker informed the Court that he was abandoning his claims related to the denial of trial records by the Appellate Division and requested that the Court "make [his federal habeas petition] inclusive" of all issues properly raised within his coram nobis petition. (D.E. # 18.) The Court therefore construed Tucker's amended petition as raising two claims: (1) that evidence was admitted in violation of the Confrontation Clause and (2) that appellate counsel had rendered ineffective assistance by failing to appeal the trial court's denial of a mistrial. (See D.E. # 19.) In a submission dated April 26, 2013, the State opposed the amended petition. (D.E. # 25.) It principally contended that the petition should be denied because the purported error would not have changed the outcome of the Appellate Division's decision.[4] (See id. at 9–17.) Tucker timely filed submissions in reply dated May 23, 2013. (D.E. # 26–27.)

## DISCUSSION

Tucker argues that he is entitled to habeas relief because: (1) the trial court violated his constitutional right to confront adverse witnesses, and (2) appellate counsel's failure to appeal the trial court's denial of a mistrial on that same basis rendered her performance constitutionally deficient. Because both claims rest on a single purported violation of the Confrontation Clause, the Court first considers that claim.

---

[4] The State also contended that Tucker's amendment was untimely, (see id. at 9–12), apparently overlooking the fact that the Court had granted Tucker leave to amend, (see D.E. # 17), and had already deemed his petition amended, (see D.E. # 19).

8

## I. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a state prisoner may petition for "a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner seeks review of a claim "adjudicated on the merits in State court proceedings," AEDPA "imposes a highly deferential" standard of review. Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (citing Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)); see also 28 U.S.C. § 2254(d). A state court is presumed to have adjudicated a federal claim on the merits when the claim "has been presented to a state court and the state court has denied relief . . . in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011).

A district court applying AEDPA deference may grant an application for a writ of habeas corpus only where the state proceedings resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Evans v. Fischer, 712 F.3d 125, 132–33 (2d Cir. 2013). "'[C]learly established Federal law' refers to holdings, and not dicta, of cases decided by the Supreme Court, as opposed to lower federal courts." Fischer, 712 F.3d at 133 (citing Williams, 529 U.S. at 412). A state court's ruling on the merits is "contrary to" a clearly established Supreme Court holding if it "arrives at a conclusion opposite to that reached by th[e] Court on a question of law or . . . decides a case differently than th[e] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13. An "unreasonable

9

application" of clearly established Supreme Court precedent occurs when "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "An application of law is 'unreasonable' only if it involves '[s]ome increment of incorrectness beyond error.'" Fischer, 712 F.3d at 133 (quoting Overton v. Newton, 295 F.3d 270, 277 (2d Cir. 2002)); see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (noting that whether a state court's determination was unreasonable is "a substantially higher threshold" than whether that determination was incorrect).

## II. Confrontation Clause

The Sixth Amendment's Confrontation Clause provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause "prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is 'unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" Ohio v. Clark, 135 S. Ct. 2173, 2179 (2015) (quoting Crawford v. Washington, 541 U.S. 36, 54 (2004)). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821 (2006). Although the Supreme Court has declined "to spell out a comprehensive definition of 'testimonial,'" it has made plain that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Crawford, 541 U.S. at 68; accord Bruton v. United States, 391 U.S. 123, 128 (1968) (holding that introduction of a nontestifying codefendant's confession implicating the defendant violated the Confrontation Clause).

10

"Testimony need not contain an explicit accusation in order to be excluded as a violation of the Confrontation Clause." Ryan v. Miller, 303 F.3d 231, 248 (2d Cir. 2002). Rather, it is well established that "[t]o implicate the defendant's confrontation right, the statement need not have accused the defendant explicitly but may contain an accusation that is only implicit." Id. (quoting Mason v. Scully, 16 F.3d 38, 42–43 (2d Cir. 1994)). Nor may the State "circumvent the Confrontation Clause by," for example, "'asking a witness what he learned from an out-of-court declarant,' as opposed to asking what an out of court declarant said." Id. at 249 (quoting Mason, 16 F.3d at 43). "The relevant question is whether the way the prosecutor solicited the testimony made the source and content of the conversation clear." Id. at 250. If it did, then allowing such testimony would be an unreasonable application of Bruton. Id. at 251.

On the other hand, statements that might otherwise constitute testimonial hearsay may be "admissible not for their truth, but to provide context for or explain a police investigation." Moore v. Ercole, No. 09-CV-1003 (CBA), 2012 WL 407084, at *8 (E.D.N.Y. Feb. 8, 2012). As the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted," Crawford, 541 U.S. at 59 n.9 (citation omitted), such statements do not run afoul of the Sixth Amendment. But, in this Circuit, such background information escapes constitutional scrutiny only if "(1) 'the non-hearsay purpose by which the evidence is sought to be justified is relevant,' and (2) 'the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement.'" Ryan, 303 F.3d at 252–53 (quoting United States v. Reyes, 18 F.3d 65, 70 (2d Cir. 1994)); accord United States v. Holmes, 620 F.3d 836, 841 (8th Cir. 2010) (limiting the admissibility of background information to cases where "the propriety of the investigation is at issue"); United States v. Silva, 380 F.3d 1018, 1020 (7th

11

Cir. 2004) (cautioning that "[a]llowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's [confrontation] right[]"). But see Chandler v. Superintendent of Upstate Corr. Facility, No. 10-CV-2347 (BMC), 2011 WL 3348128, at *2 & n.2 (E.D.N.Y. Aug. 1, 2011) (noting that New York law more broadly permits admission of such background information) (quoting People v. Tosca, 98 N.Y.2d 660, 661 (2002)).

As an initial matter, it is unclear whether any accusation implicit in Detective Bollerman's testimony referenced a statement by a nontestifying witness. Although Detective Bollerman stated that Tucker became a suspect after the police reviewed personnel files and conducted a number of interviews, he did not specify what led police to focus on Tucker. (See Trial Tr. at 731:14–732:25.) Even assuming that conclusion resulted from the interviews (and not the files), Detective Bollerman did not identify the specific source of the accusation. Given that three of those likely interviewed—Gittens, Hunt, and DeMarinis—all testified at trial, (see Trial Tr. at 412–495), it is entirely possible that any accusation implicitly relayed in the disputed testimony was, in fact, subject to cross-examination. See Reyes v. Ercole, No. 08-CV-4749 (JFB), 2010 WL 2243360, at *8–9 (E.D.N.Y. June 1, 2010) (noting similar uncertainty where one potential source testified, but two others did not). On that basis alone, the Court questions the strength of Tucker's Confrontation claim. See Ryan, 303 F.3d at 250 (stressing that the important question is whether the testimony relayed the source of such an implied accusation); Summerville v. Conway, No. 07-CV-4830 (BMC) (RML), 2008 WL 3165850, at *2–3 (E.D.N.Y. Aug. 6, 2008) (denying Confrontation Clause challenge based on detective's testimony that he interviewed "various people" before identifying the defendant as a suspect because it did "not mean that anyone in particular accused [him]").

Nor did the prosecutor attempt to use Detective Bollerman's testimony to draw an impermissible inference that certain nontestifying witnesses had implicated Tucker. To the contrary, "the prosecutor in this case was careful to include other details of the investigative process in [her] examination" to provide "a narrative trained not towards the fruits of specific interviews, but towards the end result of all investigative steps, leads, canvasses, and all other investigative steps." Moore, 2012 WL 407084, at *9 (denying habeas petition based on similar testimony); see also Alston v. Phillips, 476 F. App'x 907, 910–11 (2d Cir. 2012) (affirming denial of habeas relief where "the implicit accusation . . . was at most a peripheral component of a strong prosecution case" and "the prosecutor . . . did not call attention in summation to the testimony"). Given that the disputed testimony in this case is far more attenuated than that admitted in Ryan or Mason, the Court cannot conclude that denial of Tucker's Confrontation Clause claim was an "unreasonable application of[] clearly established federal law."[5] 28 U.S.C. § 2254(d)(1); see also Mendez, 2012 WL 6594456, at *15–19 (denying habeas petition based on similar testimony).

In any event, habeas relief is not appropriate here because the overwhelming evidence of guilt rendered any possible Confrontation Clause violation harmless. See Dell v. Ercole, No. 06-CV-1724 (RJD), 2009 WL 605188, at *8 (E.D.N.Y. Mar. 6, 2009) (citing United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004)). Far from being the "lynchpin of the prosecutor's circumstantial case," Ryan, 303 F.3d at 254, the implicit accusation here was entirely cumulative as the jury also heard both Tucker's confession and on-the-stand accounts from Palzer, Gittens, Hunt, and DeMarinis. That evidence included the on-the-stand identification of Tucker by

---

[5] If this Court were considering admissibility in the first instance, it may well have opted to exclude the disputed testimony because "the non-hearsay purpose for which the statements were introduced was of dubious relevance." Mendez v. Graham, No. 11-CV-5492 (ARR), 2012 WL 6594456, at *18 (E.D.N.Y. Dec. 18, 2012).

13

Palzer, the victim of the shooting, who testified that "all of a sudden I felt someone grab me around the neck and pull[] me down to one side and I heard three shots" and, to the question "Who was it grabbed you around your neck?" answered, "It was Marc Tucker," (see Trial Tr. at. 641:16–25). See Crawford v. Lee, No. 09-CV-4527 (CBA), 2013 WL 696527, at *8 (E.D.N.Y. Feb. 26, 2013) (finding purported error harmless where "the strength of the prosecution's case independent of the out-of-court identifications was substantial"). Given the strength of that evidence, the disputed portion of Detective Bollerman's testimony could not have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

## III.    Ineffective Assistance of Appellate Counsel

Next, the amended petition argues for habeas relief based on purportedly ineffective assistance provided by Tucker's appellate counsel. To prevail on such a claim, Tucker must demonstrate "(1) that his counsel's performance was deficient, and (2) 'that the deficient performance prejudiced the defense.'" Hemstreet v. Greiner, 491 F.3d 84, 89 (2d Cir. 2007) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). The prejudice prong of Strickland requires Tucker to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693–94.

Here, Tucker claims his counsel was ineffective because she failed to appeal the trial court's denial of the repeated motions for a mistrial based on Detective Bollerman's testimony. This was not a deficiency in appellate counsel's performance. Tucker's appellate counsel did in

14

fact argue that Detective Bollerman's testimony violated Tucker's Confrontation Clause right. (See Litsky Ex. V at 19–27.) The mere fact that appellate counsel did not frame this argument as an appeal of the denial of the motions for a mistrial does not make her performance deficient. In any event, because the Appellate Division expressly heard, considered, and rejected the substance of that argument, this fact did not prejudice the outcome of Tucker's appeal. Indeed, the Appellate Division would surely have affirmed the denial of a mistrial since it concluded that the disputed testimony "was elicited not for the truth of the matter asserted, but to explain the sequence of events leading to the defendant's arrest, [and therefore] it did not violate the defendant's right to confront witnesses." Tucker, 54 A.D.3d at 1066. Accordingly, the Appellate Division's decision on coram nobis that Tucker failed to establish that he was denied the effective assistance of his appellate counsel, see Tucker, 943 N.Y.S.2d at 898, was neither contrary to nor an unreasonable application of clearly established federal law.

## CONCLUSION

For the reasons set forth above, Tucker's petition is denied. Because Tucker has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of Court is respectfully directed to enter Judgment in favor of defendants, terminate all pending motions, and close the case.

SO ORDERED.

Dated: January 28, 2016
Brooklyn, New York

Carol Bagley Amon
Chief United States District Judge

15